UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) **INDICTMENT** |
| Plaintiff, | ) |
| | ) 18 U.S.C. § 1343 |
| v. | ) 18 U.S.C. § 981(a)(1)(C) |
| | ) 28 U.S.C. § 2461(c) |
| CHARLES EDWARD FIELDS, | ) |
| | ) |
| Defendant. | ) |

The UNITED STATES GRAND JURY charges:

### INTRODUCTION

At times relevant to this Indictment:

1.  Defendant CHARLES EDWARD FIELDS, a resident of Blaine, in the State and District of Minnesota, was the owner and operator of a series of companies through which he pitched employment opportunities to prospective workers throughout the United States.

2.  The employment opportunities that FIELDS purported to provide were through his businesses, some of which included HOMESoft Systems Incorporated, WaterTek Marketing Corporation, Water Innovations Group, Inc., W I G Holdings Corporation, Mile High H20 Corporation, and the NEW H20. From Minnesota, FIELDS operated his businesses successively from at least 2015 until at least 2020.

3.  FIELDS claimed that, after job applicants paid him an upfront deposit or fee, then he would purportedly hire them as sales contractors to sell products nationwide to the public, primarily, selling home security or water filtration systems. FIELDS represented that he would provide his workers with secure and lucrative

employment with guaranteed training, sales support, and compensation, among other things.

4. Beginning in or around 2015, and continuing until at least in or around 2020, in Blaine, Minnesota, which is within the District of Minnesota, and elsewhere, the defendant,

**CHARLES EDWARD FIELDS**,

did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

5. More specifically, FIELDS devised a scheme to defraud at least 250 individuals throughout the United States whom he had hired ostensibly as sales contractors. The purpose of the scheme was for FIELDS to unjustly benefit himself by receiving at least $600,000 in upfront deposits from his newly hired sales contractors, even though FIELDS thereafter provided his victimized workers with little, if any, of the promised training, support, equipment, or compensation.

6. As part of his fraudulent scheme designed to obtain and retain contractors' money, FIELDS provided them with materially false and fraudulent information about their employment opportunities, which FIELDS typically provided through phone calls, online postings, email messages, and through recorded audio messages. For instance, through online platforms such as Craigslist, FIELDS routinely posted employment advertisements targeted to locations throughout the country. These job postings typically claimed that individuals hired as supposed sales "group presenters" would earn a base monthly salary of $5,000 or, in other instances,

United States v. Charles Edward Fields

would earn $6,000 in guaranteed monthly profit. At other times, FIELDS's online advertisements claimed that his workers would supposedly receive $100,000 in their first year. FIELDS also promised that he would provide to his sales contractors training as well as provide them with all sales leads and the arrangement of all sales presentations. However, in reality, and as FIELDS knew full well, most of the individuals who accepted job offers from FIELDS were subsequently left with an employment opportunity that never materialized as promised by FIELDS.

    7.    It was further part of the scheme that FIELDS required his new hires to pay him an initial deposit of approximately $3,000 to $5,000. This deposit, in part, was purportedly required to pay for training materials and a prototype product, such as a water infiltration system, that the contractors would ostensibly use to demonstrate to prospective customers. However, despite paying FIELDS the required upfront deposit, many of his victims never received the product or the training that they paid for as a condition of their employment.

    8.    It was further part of the scheme that FIELDS at times misrepresented his affiliation with Company A, a long-standing international company that designs and distributes various models of water machines and filtration systems. In order to deceive potential contractors by giving his operations the appearance of legitimacy, FIELDS repeatedly mischaracterized his relationship with, and his authority to act on behalf of, Company A and its products.

    9.    As an additional part of his scheme, FIELDS misrepresented to sales contractors that their deposits would be securely held in escrow and subsequently refunded to them upon request, when, in fact, FIELDS either kept all of the sales

contractors' money or, in other instances, despite their refund requests, FIELDS provided them with refunded payments that were late, incomplete, or both, or that were refunds actually funded by other sales contractors' money.

10. In addition, in order to conceal his fraud and to stave off scrutiny, FIELDS lulled his victimized sales contractors with bogus excuses as to why he was unable to fulfill his promises or to return their funds. In some instances, when victims complained or requested their money back, FIELDS sought to dissuade them from lodging their complaints elsewhere. In other instances, FIELDS simply stopped communicating with the victims altogether. However, knowing that his previous and existing sales contractors made virtually no money, among other unfulfilled promises, FIELDS nonetheless concealed those problems and continued to pitch his purported opportunities to other unsuspecting job applicants.

11. It was further part of the scheme that FIELDS would change his companies' names repeatedly to avoid any negative association with previous consumer complaints. However, in reality, FIELDS simply continued his fraudulent operations unabated while doing so under a new and different business name, unbeknownst to many of his existing and prospective sales contractors.

12. As an additional part of his fraud scheme, FIELDS routinely deceived job applicants and sales contractors by using aliases either to conceal his own conduct or to make his businesses appear larger and more legitimate to unsuspecting victims. For instance, in some communications with victims, FIELDS purported to be "David Mueller" or "Michael Brunn," a supposed business partner and "vice president of sales." However, despite the appearance of other corporate figures, FIELDS largely

United States v. Charles Edward Fields

operated his businesses by himself typically hiding behind phony personas, unbeknownst to his existing and prospective sales contractors.

13. As a result of FIELDS's material misrepresentations and omissions, at least 250 victims were collectively defrauded of at least $600,000. However, rather than provide victims with the promised equipment or employment opportunities, FIELDS instead used much of the victims' funds for his own personal use and benefit or to refund some victims using other victims' money.

## COUNTS 1-5
(Wire Fraud)

14. Paragraphs 1 through 13 of this Indictment are incorporated by reference as if fully set forth herein.

15. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant,

**CHARLES EDWARDS FIELDS,**

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, namely, the deposits of electronic payments, as described below, each of which were routed from outside the State and District of Minnesota:

| Count | Date of Wire (on or about) | Wire |
|---|---|---|
| 1 | June 20, 2019 | Check in the approximate amount of $4,980 from victim R.K. of Florida to a bank account controlled by FIELDS |
| 2 | July 25, 2019 | Check in the approximate amount of $4,980 from C.J.D. on behalf of victim J.K. of Connecticut to a bank account controlled by FIELDS |

5

| Count | Date of Wire (on or about) | Wire |
|---|---|---|
| 3 | August 8, 2019 | Check in the approximate amount of $4,980 from victim M.B. of Washington to a bank account controlled by FIELDS |
| 4 | October 24, 2019 | Check in the approximate amount of $4,980 from D.L. on behalf of victim K.L. of California to a bank account controlled by FIELDS |
| 5 | November 1, 2019 | Check in the approximate amount of $4,980 from victim D.M. of Washington to a bank account controlled by FIELDS |

All in violation of Title 18, United States Code, Section 1343.

### FORFEITURE ALLEGATIONS

16.   Counts 1 through 5 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c).

17.   Upon conviction of any of the offenses alleged in Counts 1 through 5, as set forth in this Indictment, defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

18.   If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____        _____
UNITED STATES ATTORNEY                  FOREPERSON