Basis for request

## I. INTRODUCTION

I respectfully move the court for an order reducing my sentence under 18 U.S.C. § 3582(c)(1)(A) based on extraordinary and compelling reasons. Specifically, a combination of circumstances that, when considered together satisfy the standard for "other extraordinary and compelling reasons." § 1B1.13(b)(5).

I have been incarcerated at a facility undergoing closure for 7 months. During this time the prison camp has operated without essential staffing: No psychologist, chaplain, or RDAP coordinator. As a result, and despite presenting my documented and diagnosed co-occurring disorders; including F10.20 Alcohol Dependence Uncomplicated, F33.2 Major depressive disorder, recurrent, severe without psychotic features, and F43.10 Post-traumatic Stress Disorder Unspecified, I have been repeatedly denied and delayed access to important treatment including BOP's Residential Drug and Alcohol Program. This long-term and ongoing absence of treatment has led to severe mental health Deterioration. (Please refer to attached documents from my mental health provider.) Although I was eventually interviewed by a BOP psychologist and diagnosed with Severe Alcohol addiction, unnecessary delays have led to worsening symptoms and have also created a scenario where I can no longer complete the required 13 combined months of RDAP and TDAP while still receiving the 12 month sentence reduction benefit for

①

completing the program due to my FSA projected release date being less than 22 months away. The net impact as a result is a period of incarceration longer than what would have been, had their not been a persistent mishandling of my known mental health needs.

II. Procedural background and administrative exhaustion:
In addition to a 5+ month administrative remedy process, I submitted a Compassionate-Release request to the warden, in person, on 6-23-25 which formally denied on 6-26-25. (see attached documents "Warden C.R. Request pages 1-4)

III. Legal Standard:
Under § 3582 (c)(1)(A), a court may reduce a sentence upon finding: (1) Extraordinary and compelling reasons exist; (2) The defendant poses no danger to the community; and (3) the reduction aligns with § 3553 factors and USSG § 1B1.13 policy.

IV Extraordinary and compelling reasons:
  A) Facility Closure: The Duluth institution has been in a pending closure status for a period of 6+ months and counting. This unusual and out-of-the ordinary circumstance has stripped away critical supports such as a lack of psychologist, chaplain, and RDAP coordinator. The absence of these supports

(2)

and the long term uncertainty of the location has worsened the rehabilitative environment for all inmates, particularly those with mental health needs.

B) Deteriorating Mental and Physical health:
Without appropriate access to spiritual, psychological, and addiction treatment, my mental and physical well-being has significantly declined resulting in large fluctuations in weight, elevated anxiety, rising blood pressure, sleep deprevation due to anxiety, mental and emotional breakdowns in front of staff and inmates, along with other factors which have hampered my rehabilitative potential.

C) COVID-19
Due to the pandemic, the investigation into my criminal conduct and subsequent court proceedings spanned a period of over 4 years. During this period my mental health and alcohol addiction reached an all-time low which led me to seek therapy for the months leading into my self-surrender. The progress achieved during those months diminished because of the lack of continuity of treatment.

D) RDAP Delay
My diagnosis interview occured almost 12 months after my arrival at the institution. Originally I was screened out of RDAP due to a lack of evidence of a substance abuse issue in my PSR.

(3)

The Drug Treatment Specialist notified me of my disqualified status, saying I was "sh_t out of luck" unless my Probation officer would be willing to send the BOP a letter providing additional details which may have been left out of my PSR. Probation agreed and supplied the requested letter with details about my admitted problematic alcohol use as well as shedding light on some very unfortunate circumstances regarding my attorney who became gravely ill just prior to my sentencing. The BOP-requested "P.O. Letter" arrived in December of 2024 and eventually led to my approval for a diagnostic interview. This interview did not occur until June of 2025 where I was diagnosed by a BOP psychologist with Severe Alcohol addiction which placed me on an RDAP "Wait List." (My case manager would not provide me with a copy of the P.O. Letter and therefore it is not attached but can be retrieved by the court through access to my central file or by contacting the P.O. who drafted my PSR.)

E) RDAP Transfer

RDAP is not available at FPC Duluth. In order to begin RDAP I will need to be transferred to another institution, further away from my Minnesota-based family which would compound the challenges created by long-term unaddressed mental health disorders.

④

An RDAP transfer will also result in an unknown amount of time in transit without needed treatment.

F.) Mishandling of mail and time sensitive Administrative remedy correspondence:

The BOP Administrative Remedy process is designed to provide incarcerated individuals with access to a fair and reasonably timely process for seeking remedy when they feel they have been subjected to unfair treatment.

When executed properly, the BOP gives itself 10 days to respond to a BP8, 20 days to respond to a BP-9, and 30 days to respond to a BP10 in the event that issue is unresolved by the BP8 or BP9. The total for all 3 escalating levels of remedy combined is 60 days not including handling time by the inmate.

In my case, the Administrative Remedy process took over 160 days including my own handling time of only 8 days. To clarify, the BOP took 152 days to complete a remedy process designed to be completed in less than 60.

Unfortunately and disturbingly, much of this excessive lost time can be accounted for when examining a repeated pattern of BOP staff mishandling and/or intentionally delaying the movement of time-sensitive mail and administrative remedy correspondence.

The following timeline illustrates several instances where significant time was lost due to delays caused by BOP staff.

⑤

2-6-25: Warden rejects my BP9 request for remedy, however I am not notified of rejection or provided the appeal form for 8 days, on 2-14-25. The 20-day deadline for appeal began on the day of the rejection on 2-6-25.

2-20-25: I submit my appeal (BP10) to the mail room to be shipped to the regional office through USPS Priority First Class mail. Mail room provides me with a tracking number which I immediately email to my wife, asking her to monitor delivery. (please refer to attached document "spouse email with tracking" which shows the date and time of my confirmation to my wife that my BP10 was accepted by a mail room staff member.) The attached email was printed directly off of the BOP Trulincs system using a BOP printer.

2-25-25: I am notified by my wife that the mailed BP10 has still not been scanned in as received by the Post Office. (Please refer to attached document "spouse email #2)

3-4-25: BP10 is finally scanned in as received at the post office. This occurs a few days after I ask mail room to look for the missing mail in case it was accidentally misplaced. I also ask how to open a lost mail case with the post office.

3-6-25: BP10 is received at regional office and rejected for arriving after the deadline through no fault of my own. Rejected BP10 is mailed back to FPC Duluth.

⑥

3-20-25: BP10 rejection is still not received back. I ask my counselor to provide a new BP10 and he refuses, stating that we should not appeal a rejected BP10 until we receive the rejection.

3-27-25: BP10 rejection is still not received. I once again request a new BP10 and advise my counselor that my wife has been in contact with the regional office and that the regional made the suggestion to send a new BP10. Counselor becomes visibly irritated and asks me to step outside for a minute. After a few minutes I am called back into the office and told "the BP10 just arrived" and is at the Unit Secretary's office. My counselor told me he'd call ~~would~~ me in the morning to receive it and begin the new BP10. The call never came and I never saw him again for 2 weeks.

4-7-25: I finally see my counselor and receive my BP10 rejection, my new BP10 form, and a request for extension. (Please refer to attached document "mishandled mail and correspondence 4-7-25)

4-9-25: I submit my BP10 form once again to the mail room to be shipped to Region, this time using Certified Mail.

6-30-25: 70 days has passed so I stop by counselor's office to ask for an update regarding my BP10. Once again my Counselor states that it "just arrived" however the time stamp shows that it arrived 18 days ago on June 12th.

(7)

The counselor hands the BPIO to me along with another request for extension. (Please refer to attached documents "mishandled mail and correspondence 6-30-25 #1 and #2) Please note that both extensions (4-7-25 ext. and 6-30-25) show a significant amount of time between the date the appeal was signed, and the date it was received by me.

The BPIO response from region states that I am next on the list to be interviewed for RDAP as of April 25, 2025 however it does not address my primary request for a prompt interview and furlough to an RDAP facility to begin treatment.

G:) Unordinary RDAP placement timing

In the BPIO response from the regional office it is stated that the "Drug Abuse Program Coordinator decides whether to place individuals in RDAP based on their proximity to release date, ordinarily no less than 24 months from release." (Please refer to attached document "Regional BPIO response"). As of July 6, 2025 my release date is already less than 21.5 months away and I am still not programming, rendering it impossible to complete the 13 month required RDAP and TDAP programs and benefitting from the full 12 month sentence reduction.

H:) Gravely Ill Defense Attorney.

As described in my previously referenced "P.O. letter," my attorney who represented me in my Federal

(8)

Court proceedings became gravely ill at a critical stage in the defense process. He was unable to attend my sentencing hearing and sadly passed away shortly after.

Our original plan was to ask for a judicial recommendation for RDAP at sentencing however the stand-in attorney did not make the request. Referring back to the "P.O. Letter," probation stated that the judge would have "almost certainly" made the recommendation if requested. This is likely due to the multiple DUI's and a statement I made in my PSR interview stating I wanted a healthier relationship with alcohol.

Unfortunately the passing of my retained attorney also left me without legal assistance while in prison which could have been valuable during this challenging Administrative Remedy process and drafting this motion.

I:) Unprofessional Staff Conduct

This motion would be incomplete without including details of 4 separate incidences of unprofessional staff conduct;

Incident 1: Being screened out of RDAP, being told I am "Sh-t out of luck" is an inappropriate way to reject someone seeking mental health treatment. This staff member has since apologized which I appreciated and accepted however it still happened and left a mark.

(9)

Incident 2: After knocking on a different DTS's door I was greeted by the words "who the F_ck is knocking on my door?" This staff member has also apologized for my entire experience stating it should have never happened. She has encouraged me to advocate for relief. I hold no ill-will towards either of these DTS's. The camp closure was recently announced and it was a difficult time for everyone. Nonetheless it still happened and had an impact.

Incident 3: "I can give you 60 seconds." These are the words of a psychologist who was filling-in due to our lack of a staff psychologist. She was responding to me asking if she had a few minutes to talk. She was true to her word and gave me an uncomfortable minute of her time. A lot went unsaid that day.

Incident 4: On July 2nd, 2025, a little over a week after I personally handed the Warden a letter asking for Compassionate Release, and 1 day after telling me he read the letter. While in the middle of an emotional 1 on 1 with a DTS behind closed doors the warden walked in & jokingly said "I'm here to take Fields to the SHU." It was clear that he was joking however it was inappropriate considering the contents of the Compassionate Release request he had just read. He asked the DTS a quick question and left after saying "Sorry for the interruption, this guy needs help!" jokingly.

10

The DTS could tell how visibly upset I was as I had a near mental breakdown. I told her I felt the interaction was an accurate representation of my mental health experience at the prison. I'd been serious about wanting help from Dayl, and after all of this time and mental anguish I am still not being taken seriously.

J:) Case Law:

Courts recognize that a delay or denial of programming or treatment can support a compassionate release as shown in United States of America v. Ashley Wade Siclovan. (Please refer to attached case law)

K:) Accountability:

Since I am qualified to fully earn both FSA and SCA time credits, an immediate release would have a net effect of a community release only a few months earlier than would have occurred had I received a timely placement into RDAP. This would allow me to resume treatment with my private provider immediately without seriously compromising the original sentence's intentions.

When considered together, these combine to satisfy the standard of "other extraordinary and compelling reasons."

Because I am not a danger to society and I pose no threat to the public, my only outstanding need is treatment, not incarceration.

(11)

V. 3553 Factors:

Reducing my sentence to time served would:

* Allow me to further my rehabilitation to align with sentencing goals.
* Maintain accountability as I have served over a year of my sentence in a challenging environment while having zero incident reports and participating in nearly all available programming.
* Result in immediate relief and resolve issues before they lead to additional punishment not intended in the sentence.

VI. Proposed Relief:

I respectfully request:

1. A sentence reduction to time served - preferred
2. Alternatively, a reduction of sentence of 12 months, equal to the sentence reduction achieved through RDAP and a designation to Home Confinement for the remainder of sentence so that I can immediately resume psychological and substance abuse treatment.

VII. Conclusion: Given the BOP's failure to provide necessary treatment, along with concerning issues regarding the Administrative Remedy process and unprofessional conduct, extraordinary and compelling reasons justify compassionate release. The reduction aligns with sentencing purposes and public safety considerations. Therefore I respectfully request that the Court grant this motion.

(12)

Respectfully Submitted,

Charles Fields
Inmate 66628-510
7/7/2025

*signature*

\* Request to Maintain Jurisdiction –
- In the likely event that I am transferred to another facility, I respectfully request this motion to remain under the jurisdiction of the District Court of Minnesota as it is my original sentencing District and the District with Jurisdiction over the Prison Institution referenced throughout this Motion.

Please send correspondences to: (Spouse and POA)
Katherine Fields
2923 S. Coon Creek Drive
Andover, MN 55304

Respectfully,
*signature* 7-7-25
Charles Fields

(13)